# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERYL PIERCE, | Case No. 1:12-cv-00920-SKO |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S COMPLAINT** |
| v. | |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Cheryl Pierce ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## FACTUAL BACKGROUND

Plaintiff was born in 1959, obtained a bachelor's degree, and worked as a teacher. (Administrative Record ("AR") 51, 83.) Plaintiff had been found to be disabled as of July 16,

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge for all purposes. (Docs. 9, 10.)

2001; however, it was determined that she was no longer disabled as of September 1, 2008, and her disability was ended. (AR 25, 84-97, 131-34.) On October 28, 2008, Plaintiff requested reconsideration of her disability cessation. (AR 137.) Plaintiff contended that she was unable to work due to severe chronic back pain, asthma, and mental conditions. (AR 140.)

**A.     Relevant Medical Evidence[2]**

On January 28, 2008, a magnetic resonance imaging ("MRI") was performed on Plaintiff's cervical spine and lumbar spine. (AR 572-86.) The MRI of Plaintiff's cervical spine revealed moderate degenerative disc changes with disc protrusions at C5/C6, C3/C4, C4/C5, and C6/C7, with mild degenerative disc changes at C2/C3 with disc protrusion and at C7/T1 with disc bulge. (AR 573-74.) There was bilateral neuroforaminal narrowing causing effacement of the discs. (AR 573.) The MRI of the lumbar spine revealed an annular tear of the posterior fibers of L5/S1; mild spinal canal narrowing of L4/L5 and L5/S1 due to a combination of disc protrusion and degenerative change; mild degenerative disc changes at L5/S1; broad based disc protrusion at L3/L4, L4/L5, and L2/L3; subtle disc bulge that effaces the thecal sac at L1/L2, and intramural uterine myomas. (AR 581-82.)

On June 20, 2008, Jonathan M. Gurdin, M.D., performed an orthopedic evaluation of Plaintiff. (AR 594-96.) Dr. Gurdin noted that he obtained his information regarding Plaintiff's history from "brief medical reports" and directly from Plaintiff. (AR 594.) Plaintiff reported that she first injured her back when she was 24 or 25 years old and a heavy item fell on her; she was treated with physical therapy. (AR 594.) Her back was reinjured in 2001 and she underwent intradiscal electrothermic therapy ("IDET"). (AR 594.) There was improvement after that surgery. (AR 594.) Plaintiff's back was injured again in an accident in 2006 while she was working on school grounds. (AR 594.) Plaintiff stated that she underwent a lumbar magnetic resonance imaging ("MRI"), which showed broad disc protrusions and mild degenerative disc

---

[2] Plaintiff's brief raises arguments regarding the administrative law judge's ("ALJ") decision related to Plaintiff's physical limitations, and does not raise arguments related to her mental limitations. (*See* Doc. 18.) As such, the Court will only consider the medical evidence relevant to Plaintiff's contentions concerning her physical limitations, as Plaintiff has waived any arguments as to mental impairments. See *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (explaining that arguments not raised before the district court are generally waived). Further, the Court will only discuss medical evidence relevant to this decision and not all medical evidence in the record.

disease. (AR 594.) Plaintiff complained of constant pain and was informed she needed a lumbar fusion. (AR 594.) Plaintiff reported that her neck was injured and she had neck surgery in 2005. (AR 594.) Her neck injuries were aggravated in the 2006 accident, and she was informed that there was a "bad disc in the neck and she needs a second surgery." (AR 594.) Plaintiff complained of constant aching in the neck that worsened with neck and arm motion and when she was wearing high heels. (AR 594.) Plaintiff's left shoulder was also injured in the 2006 workplace accident, and she underwent arthroscopic surgery in 2006. (AR 595.) Although there was improvement to Plaintiff's shoulder pain after surgery, she continued to have restricted motion of the joint. (AR 595.)

Upon examination, Dr. Gurdin noted that Plaintiff "seemed to show exaggerated pain behavior." (AR 595.) Plaintiff had a faint anterior surgical scar on her neck, with slight tenderness but no muscle tightness. (AR 595.) Dr. Gurdin indicated that Plaintiff "seemed to give a poor effort with range of motion testing of the back." (AR 595.) An examination of Plaintiff's left shoulder revealed arthroscopic scars. (AR 595.) Plaintiff's shoulder had slight tenderness, the shoulder motion was restricted, and Plaintiff complained of pain. (AR 595.) Plaintiff's low back had a faint ½ centimeter scar. (AR 595.) Plaintiff "complained of tenderness everywhere," although Dr. Gurdin noted no muscle tightness. (AR 595.) Plaintiff was diagnosed with cervical disc disease with one prior surgery; lumbar disc disease with a prior IDET, by history; prior impingement syndrome of the left shoulder with surgery; prior internal derangement of the left knee; probable tear of the ulnar collateral ligament of the left thumb; and moderate obesity. (AR 596.) Dr. Gurdin noted that "[o]btaining current medical records would be helpful in evaluating this patient. There seemed to be exaggerated pain behavior. There appears to be a discrepancy between what she is capable of doing and what she is willing to do." (AR 596.) As such, Dr. Gurdin was "unable to accurately estimate [Plaintiff's] activity capacity." (AR 596.)

On May 27, 2009, Plaintiff was seen by Theodore Georgis, Jr., M.D., for a comprehensive orthopedic evaluation. (AR 632-36.) Plaintiff's chief complaints were neck pain, low back pain, and left shoulder pain, and Dr. Georgis did not review Plaintiff's medical records. (AR 632.) Dr. Georgis noted that Plaintiff reported her past history, which included a work injury in 1989, when

her neck, back, and left shoulder were injured. (AR 632.) In 2004, Plaintiff underwent an anterior cervical discectomy and fusion, which helped her until 2006 when she was re-injured at work and her neck pain worsened. (AR 632.) Plaintiff's doctors recommended further surgery including the placing of plates and screws; Dr. Georgis noted that the recommended surgery had not yet been performed. (AR 632.) Plaintiff described her symptomatology as "sharp pain in the neck, going into the left shoulder and down the arm. It is on average a grade 10/10, and made worse with any type of physical activity, housework, or turning of the head." (AR 632.) Plaintiff described numbness, tingling, and weakness of the left upper extremity, and stated she had frequent episodes of walking imbalance. (AR 632.) Plaintiff also reported injuries to her lower back in 2004, noting that she underwent a discectomy from the left flank that helped at first; her symptoms worsened after the 2006 accident when further surgery was recommended. (AR 632-33.) Plaintiff's low back symptoms consisted of sharp pain going into both hips and legs, with an average grade of 10/10, and worsened with prolonged sitting and standing. (AR 633.) Plaintiff described numbness, tingling, and weakness in both legs. (AR 633.) Plaintiff injured her left shoulder in the 2006 accident, and underwent arthroscopic surgery in 2007 that did not help but worsened her condition. (AR 633.) Plaintiff reported constant pain and stiffness in her left shoulder. (AR 633.)

Dr. Georgis conducted a physical examination of Plaintiff and noted that she was in "apparent moderate discomfort in her neck and back." (AR 633.) Plaintiff had an "[a]ntalgic limp on the left side . . . . She [was] able to heel and tandem walk, but not toe walk." (AR 634.) Dr. Georgis made the following general findings:

> 1. Back shows a left lateral flank portal scar from her discectomy. There is mild tenderness in the paralumbar musculature, but no spasm, deformity, or instability.
>
> 2. Neck shows a right anterior scar with mild paracervical musculature tenderness, no spasm or deformity.
>
> 3. Left [shoulder] shows diffuse tenderness over the bicep groove, as well as the subacromial space. Impingement sign is negative. No evidence of rotator cuff weakness noted.

(AR 635.)

Dr. Georgis diagnosed Plaintiff with recurrent neck pain, status post anterior cervical discectomy and fusion with radiculitis; recurrent low back pain, status post discectomy, with radiculitis; and left shoulder pain, status post-accident, probable bursitis.  (AR 635-36.)  Dr. Georgis provided a functional assessment of Plaintiff's limitations, but noted that "[c]orrelation with treating records, x-rays, and MRI scans would be very helpful in elucidating what [Plaintiff's] actual diagnoses are and the nature of her cervical and lumbar discs canals."  (AR 636.)  Dr. Georgis opined that Plaintiff could sit, stand, and/or walk six hours in an eight-hour day; lift 20 pounds occasionally and 10 pounds frequently; was limited to frequent balancing, climbing, stooping, kneeling, crouching, and crawling; was limited to frequent reaching with the left shoulder due to injury but had no other manipulative limitations; had no visual, communicative, workplace environmental limitations; and did not require an assistive device.  (AR 636.)

On July 1, 2009, State Agency physician, G.W. Bugg, M.D., assessed Plaintiff's physical residual functional capacity ("RFC")[3].  (AR 638-44.)  Dr. Bugg opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand, walk and/or sit six hours in an eight-hour day; occasionally climb and crawl; frequently balance, stoop, kneel, and crouch, and had limited reach.  (AR 639-40.)

On October 2, 2009, Plaintiff underwent an anterior cervical discectomy with fusion, radical discectomies, and related surgeries at Temple Community Hospital.  (AR 706.)

On February 23, 2010, Arthur G. Collins, M.D., Plaintiff's treating physician, indicated that Plaintiff was having difficulties post-surgery.  (AR 750.)  Dr. Collins examined Plaintiff and stated that she needed another back fusion surgery at L4/S1.  (AR 750.)

On May 18, 2010, Dr. Collins indicated on what appears to be a prescription pad that Plaintiff had undergone multiple orthopedic surgeries and required another back fusion surgery. (AR 714; *see also* AR 749.)

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  Social Security Ruling 96-8p.  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id.*

On July 27, 2010, Plaintiff reported to Dr. Collins that she was still experiencing constant pain. (AR 748.)

On November 23, 2010, Dr. Collins noted that Plaintiff was going to physical therapy and was complaining of pain. (AR 747.) Dr. Collins ordered MRIs. (AR 747.)

On December 17, 2010, MRIs were performed on Plaintiff's cervical spine and lumbar spine. (AR 710-13.) The MRI of the cervical spine revealed that Plaintiff was status post anterior fusion. (AR 711.) There was concentric uncovertebral hypertrophy, mild to moderate neural foraminal narrowing, and mild central canal narrowing of C4/C5 and C5/C6. (AR 711.) The MRI noted that while the study was not tailored to evaluate the soft tissue of the neck, there was "prominence of the nasopharyngeal soft tissues of uncertain significance . . . than would ordinarily be anticipated for a patient of this age (51 years)." (AR 711.) The MRI of the lumbar spine revealed concentric broad-based bulges at L4/L5, L5/S1, and L3/L4, with mild to moderate central canal narrowing and mild to moderate neural foraminal narrowing. (AR 713.) There was multilevel mild chronic degenerative change of the lumbar spine. (AR 713.)

On February 8, 2011, Dr. Collins indicated that Plaintiff was still complaining of pain and that she needed a lumbar fusion. (AR 746.)

On May 11, 2011, Dr. Collins completed a medical source statement, which was admitted to the record by the Appeals Council on February 13, 2012. (AR 7-12, 799-800.) Dr. Collins stated that Plaintiff had severe axial and radicular back pain, and that any odd position or movement caused severe back pain. (AR 799.) Dr. Collins stated that Plaintiff has difficulty sitting more than 30 minutes due to joint disease and cervical and lower back pain that requires a spinal fusion. (AR 799.) Dr. Collins opined that Plaintiff could lift less than 10 pounds occasionally and frequently, and could stand and/or walk less than two hours in an eight-hour day. (AR 799.) Plaintiff could never climb, balance, stoop, kneel, crouch, or crawl and could only occasionally reach. (AR 800.) Dr. Collins opined that Plaintiff's prognosis was poor, but that she would get "some relief" with further back surgery. (AR 800.)

**B.    Lay Testimony**

On February 10, 2009, Arnold Walter completed a Third Party Adult Function Report. (AR 373-80.) Mr. Walter indicated that he knew Plaintiff for two years and spent "about four hours a day" with Plaintiff. (AR 373.) Mr. Walter stated that Plaintiff had difficulties with lifting, bending, reaching, and stair climbing due to her injuries because those activities require movement of Plaintiff's "problem area." (AR 378.) Plaintiff could "not [walk] very long" before needing rest and required a break about every "ten to twenty minutes." (AR 378.) Mr. Walter noted that Plaintiff did not prepare her own meals because "[s]he has a problem with reaching in the cabinets and holding pot[s] and pan[s] [be]cause of [her] injury." (AR 375.) Mr. Walter also noted that "walking and bending can cause a [flare] up in [Plaintiff's] shoulder and back." (AR 376.)

**C.    Administrative Hearing**

The Commissioner determined that Plaintiff was no longer disabled as of September 1, 2008, and her disability was ended. (AR 25, 84-97, 131-34.) Her request for reconsideration of that decision was denied; consequently, Plaintiff requested a hearing before an ALJ. (AR 150-64.) On April 7, 2011, ALJ Michael Haubner held a hearing in which Plaintiff, represented by counsel, and vocational expert Jose Chapparo testified. (AR 43-82.)

Plaintiff testified that she had a bachelor's degree and previously worked as a teacher. (AR 51.) Plaintiff stated that she could not lift over 10 pounds, could stand for 45 minutes, could sit for an hour, and could walk 10 feet. (AR 53-55.) Plaintiff indicated that she was fully compliant with her treatment and medications, although she followed her diet "about 75%" of the time and smoked three cigarettes per day. (AR 55-57.) Plaintiff had an unrestricted driver's license and would drive "[m]aybe once a day." (AR 58.) Plaintiff testified that she paid someone to come in every day to help her dress, but that she was able to bathe and feed herself and could prepare simple meals. (AR 59-61.) Plaintiff stated that she did not do dishes, shop for groceries, or do chores around the house. (AR 61-63.) Plaintiff attended church every week, read for an hour each day, watched television three hours a day, and talked to her neighbors on a daily basis. (AR 63-65.)

Plaintiff testified that Dr. Collins recommended further back and neck surgery. (AR 75.) Plaintiff stated that the surgeries had yet to be performed. (AR 77.) Plaintiff indicated that her pain level was 10 out of 10, that pain medication only provided temporary relief, and she could not find a comfortable position to sit or stand. (AR 77-78.) Plaintiff would attempt stretching and topical creams to relieve her pain. (AR 78-79.) The pain medication would make her drowsy. (AR 79.) Plaintiff would lie down for two hours in an eight-hour time period. (AR 79-80.)

**D.    The ALJ's Decision**

On April 15, 2011, the ALJ issued a decision finding Plaintiff not disabled since September 1, 2008, the date her disability ended. (AR 22-36.) The ALJ found that (1) the most favorable medical decision that Plaintiff was disabled was the determination dated April 10, 2002, known as the comparison point decision ("CPD"); (2) at the time of the CPD, Plaintiff had the medically determinable impairment of adjustment disorder based on the requirements in the Code of Federal Regulations; (3) Plaintiff had not engaged in substantial gainful activity since September 1, 2008, the date her disability ended; (4) Plaintiff currently had the following severe impairments: status post cervical discectomy and fusion, status post lumbar discectomy bilaterally with pain, left shoulder impingement, and superior labral anterior-posterior ("SLAP") lesion; (5) Plaintiff did not have an impairment or combination of impairments that met or equaled one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (6) medical improvement occurred as of September 1, 2008; (7) as of September 1, 2008, Plaintiff no longer met or equaled the same listing that was met at the time of the CPD; (8) as of September 1, 2008, Plaintiff continued to have severe impairments; (9) as of September 1, 2008, Plaintiff had the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently, to sit, stand or walk about six hours in an eight-hour workday, to occasionally climb and crawl, to frequently balance, stoop, kneel, and crouch, and to occasionally work at or above shoulder level;  (10) Plaintiff was able to perform past relevant work as a preschool teacher and supervising director beginning on September 1, 2008; and (11) Plaintiff's disability ended on September 1, 2008, and she had not become disabled again since that date. (AR 27-36.)

**E.     The Appeals Council Decision**

Plaintiff sought review of the ALJ's decision with the Appeals Council, which was denied on February 13, 2012. (AR 7-12, 21.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. The Appeals Council entered additional evidence and arguments into the record, including Dr. Collins' medical source statement. (AR 11, 799-800.)

**F.     Plaintiff's Current Appeal**

On June 6, 2012, Plaintiff filed the current complaint before this Court seeking review of the ALJ's decision. (Doc. 1.) Plaintiff contends that the ALJ erred in failing to give appropriate weight to the treating and examining physicians and failed to properly evaluate Plaintiff's subjective complaints and complaints of pain. (Doc. 18.)

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

**DISCUSSION**

Plaintiff contends that the ALJ failed to give appropriate weight to the treating and examining physicians and failed to properly evaluate Plaintiff's credibility and the credibility of the third-party witness. (Doc. 18.) Defendant contends that the ALJ provided an accurate account of the medical evidence and properly explained the weight he gave to the relevant medical sources, explained why Plaintiff was not fully credible, and considered the lay witness testimony. (Doc. 19.)

**A.    The ALJ's Consideration of Medical Evidence**

Plaintiff contends that the ALJ erred in giving significant weight to Dr. Georgis' opinion because he was not given medical records prior to examining Plaintiff, was unaware of her history, and therefore did not have the full information needed to evaluate and assess her condition. (Doc. 18, 15:10-17:3.) The ALJ further erred in relying on the State Agency physician's opinion, since it was based on Dr. Georgis' findings and the ALJ admitted that the findings were made prior to Plaintiff's cervical spine fusion. (Doc. 18, 12:12-17:3.) The ALJ also erred in giving some weight to Dr. Gurdin's opinion, since Plaintiff's medical records were not provided to Dr. Gurdin prior to the examination. (Doc. 18, 17:4-9.) Additionally, the ALJ erred in determining that "there [was] nothing to show that the claimant was not expected to recover" from her 2009 surgery, since this finding was contradicted by the evidence. The ALJ failed to discuss the records after Plaintiff's surgery, such as the December 2010 MRI that showed abnormal findings or the treatment records from Dr. Collins indicating that Plaintiff continued to have radiating pain and required additional surgery. (Doc. 18, 17:21-18:7.) Further, the Appeals Council admitted additional evidence into the record from Dr. Collins where he notes that, without additional surgery, Plaintiff's prognosis is poor, which "refutes the ALJ's unfounded belief that [Plaintiff] would likely recover and not have any greater limitations that those set forth in [the ALJ's] RFC." (Doc. 18, 15:21-22.)

Defendant contends that the ALJ provided an accurate account of Plaintiff's medical records. (Doc. 19, 11:22-14:4.) Defendant asserts that Drs. Georgis and Gurdin were not required to review all of Plaintiff's medical records since they examined Plaintiff and made their own independent findings. (Doc. 19, 12:11-21.) Additionally, Plaintiff's assertion that she would

continue to have complications after surgery was based on speculation. (Doc. 19, 12:25-27.) The ALJ properly interpreted the medical evidence and is the final arbiter as to any ambiguities. (Doc. 19, 12:27-13:5.) The ALJ was not required to discuss all medical records, including Plaintiff's post-operative MRI. (Doc. 19, 13:6-14.) Finally, Dr. Collins' assessment of Plaintiff was based almost entirely on her subjective reports of pain, and, although he found that Plaintiff's prognosis was poor, he also stated that surgery would provide some relief. (Doc. 19, 13:14-28.)

### 1. The ALJ Failed to Discuss the Medical Evidence After Plaintiff's October 2009 Surgeries

In determining Plaintiff's RFC, the ALJ gave significant weight to the May 2009 opinion of the consultative examiner Dr. Georgis and the July 2009 opinion of the State Agency physician, Dr. Bugg, and gave some weight to June 2008 opinion of consultative examiner Dr. Gurdin. (AR 32-34.) The ALJ noted that Plaintiff had a "recent cervical spine fusion" in October 2009, and that the State Agency physician's evaluation "was admittedly before the fusion."  (AR 34.) Nonetheless, the ALJ adopted the State Agency physician's evaluation for the RFC, concluding that "there is nothing to show that the claimant is not expected to recover, or to show any greater limits than those by the most recent State Agency evaluator." (AR 34.)

The ALJ's decision does not clearly set forth the medical evidence upon which he bases his conclusion that Plaintiff will recover after the October 2009 surgery. (*See* AR 34.)  The ALJ does not discuss several medical records for dates after the October 2009 surgery, including the December 17, 2010, MRIs of the cervical spine and lumbar spine that showed abnormalities such as concentric uncovertebral hypertrophy and broad based disc bulges that produced moderate neural foraminal narrowing and mild central canal narrowing. (AR 711, 713.) Nor does the ALJ discuss the medical records from Plaintiff's treating physician, Dr. Collins, which indicate that Plaintiff continued to experience pain after the October 2009 surgery and required additional fusion surgery. (*See*, *e.g.*, AR 750 (dated February 23, 2010, indicating Plaintiff was having difficulties and needed another fusion surgery at L4/S1), AR 714, 749 (dated May 18, 2010, indicating Plaintiff needs L4/S1 fusion and shoulder surgeries), AR 748 (dated July 27, 2010, indicating Plaintiff experience constant pain), AR 747 (dated November 23, 2010, indicating

1 Plaintiff continued to experience pain and ordering a MRI), AR 746 (dated February 8, 2011,
2 indicating Plaintiff needs lumbar fusion).)

3       Defendant contends that "the ALJ is not required to discuss every piece of evidence in the
4 record," and that "[i]t is clear that the ALJ reviewed all the evidence in the record that was before
5 him . . . and Plaintiff fails to explain how a discussion of these specific records would materially
6 alter the ALJ's findings."  (Doc. 19, 13:8-14.)

7       While it true that the ALJ "need not discuss *all* evidence," he is required to "explain why
8 significant probative evidence has been rejected."  *Vincent on Behalf of Vincent v. Heckler*,
9 739 F.2d 1393, 1394 (9th Cir. 1984) (citing *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir.1981))
10 (internal quotation marks omitted); *see also Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012)
11 ("[T]he ALJ is not required to discuss evidence that is neither significant nor probative." (citing
12 *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir.2003))).  Here, however, the
13 evidence not discussed by the ALJ is significant and probative, since it appears to directly conflict
14 with the ALJ's finding that "there is nothing to show that the claimant is not expected to recover"
15 after the October 2009 surgery.  (AR 34.)  The December 2010 MRIs show abnormalities in
16 Plaintiff's spine, which appeared to have worsened since the Plaintiff's January 2008 MRI results,
17 and the treatment notes from Dr. Collins dated from 2010 through 2011 state that Plaintiff requires
18 an additional spinal surgery.  (*See* AR 711, 713-14, 746-49.)

19       As such, it appears that there is evidence in the record that shows that Plaintiff did not
20 recover as the ALJ predicted; the ALJ also failed to explain on what evidence he based that
21 prediction.  To the extent there are conflicting medical records that show Plaintiff recovered after
22 the October 2009 surgery or that her conditions were not disabling, the ALJ failed to discuss those
23 records as well.  Accordingly, the ALJ's decision is not supported by substantial evidence upon
24 which to base his conclusion that Plaintiff was expected to recover after her surgery, and his RFC
25 is based only upon records that occurred prior to Plaintiff's October 2009 surgery.  (*See* AR 30-
26 34.)

27       It is the ALJ's responsibility to provide an interpretation of the facts and conflicting clinical
28 evidence, and make a finding based on that interpretation.  *Tommasetti v. Astrue*, 533 F.3d 1035,

1041 (9th Cir. 2008). The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Id.* It is prejudicial error to disregard significant and probative evidence without comment. *See Vincent*, 739 F.2d at 1394.

Here, the ALJ made a finding that there was no reason that Plaintiff would not recover after her October 2009 spine surgery (AR 34), but failed to comment on potentially contrary evidence such as the MRIs showing spinal abnormalities and the treatment notes indicating that Plaintiff needed additional surgery. The ALJ was required to address this evidence and explain why he rejected it, and remand is appropriate for the ALJ to consider these issues. The Court expresses no view on whether the ALJ's ultimate conclusion was incorrect or whether contrary evidence supports his finding. Instead, the Court concludes that the ALJ's erred in failing to discuss significant and probative medical records.

**2.    Evidence Submitted by Plaintiff for the First Time to the Appeals Council**

In rejecting Plaintiff's request for reconsideration of the ALJ's decision, the Appeals Council received additional evidence by Plaintiff and made it part of the record, including a medical source statement dated May 11, 2011, by Dr. Collins that indicated Plaintiff required additional surgery and that her prognosis was poor without that surgery. (AR 11.)

Pursuant to 20 C.F.R. §§ 404.970 (b), 416.1470(b), evidence submitted for the first time to the Appeals Council must be considered as follows:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date the administrative law judge hearing decision . . . It will then review the case if it finds that the administrative law judge's actions, findings, or conclusion is contrary to the weight of the evidence currently of record.

Plaintiff contends that, although Dr. Collins' medical source statement is dated May 11, 2011, after the ALJ's April 15, 2011, decision, the evidence relates to the period of time considered by the ALJ. (Doc. 18, 18:26-19:13.)

The Ninth Circuit has held that where a claimant submits evidence for the first time to the Appeals Council, which is in turn considered by the Appeals Council in denying review of the ALJ's decision, the new evidence must be treated as part of the administrative record. *Brewes v.*

*Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012).  As such, the district court is obligated to consider that evidence in determining whether the ALJ's decision is supported by substantial evidence.  *Id.*  The *Brewes* court clarified that claimants are not required to show "good cause" before submitting new evidence to the Appeals Council.  *Id.* at 1162.  Nor is a claimant required to establish that the new evidence is material to trigger the district court's obligation to consider it where it has already become part of the record by virtue of the Appeals Council's review of the evidence.  *Id.* at 1164.  Rather, when the Appeals Council accepts a claimant's proffer of new evidence and makes it part of the record, it is essentially concluding that the evidence is material within the meaning of 20 C.F.R. §§ 404.970(b), 416.1470(b).  *Id*.  Thus, in reviewing new evidence submitted for the first time to the Appeals Council, courts are required to determine "whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence."  *Id*. at 1163.

Dr. Collins' medical source statement indicates that Plaintiff required additional fusion surgery and that her prognosis was poor, although further surgery may provide "some relief."  (AR 799-800.)  Dr. Collins further opined that Plaintiff could lift less than 10 pounds occasionally and frequently; could stand and/or walk less than two hours in an eight-hour day; could never climb, balance, stoop, kneel, crouch, or crawl; and could only occasionally reach.  (AR 799-800.)  Dr. Collins' medical source statement related directly to his findings regarding Plaintiff's post-operative status.  As noted above, the ALJ did not discuss Dr. Collins' findings after Plaintiff's 2009 surgery, and instead concluded, without providing reasons based upon the medical evidence, that Plaintiff was expected to recover and there would be no greater limits than those set forth by the State Agency physician in July 2009, prior to Plaintiff's surgery.  While the ALJ may be able to point to evidence in the record that supports that conclusion, he must discuss the substantial and probative evidence that potentially contradicts his finding, provide an interpretation of the facts and conflicting clinical evidence, and make a finding based on that interpretation.  *Vincent*, 739 F.2d at 1394; *Tommasetti*, 533 F.3d at 1041.  Accordingly, as this case is being remanded to allow the ALJ to consider the medical evidence following Plaintiff's

October 2009 surgery, the ALJ should also consider Dr. Collins' medical source statement in relation to that evidence.

### 3. The ALJ's Consideration of the Examining Physicians

Plaintiff contends that the ALJ gave improper weight to the consultative examining physicians, Drs. Georgis and Gurdin, because both physicians indicated that being provided with Plaintiff's medical records would have been helpful in evaluating Plaintiff and determining her diagnosis. (*See* AR 596, 636.) Defendant contends that the ALJ was entitled to rely on Drs. Georgis' and Gurdin's opinions because they conducted independent medical evaluations and presented independent clinical findings.

The ALJ may rely on the findings of an examining physician. An examining physician's "opinion alone constitutes substantial evidence, because it rests on his own independent examination." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, both Drs. Georgis and Gurdin conducted physical examinations of Plaintiff and made their findings based on those examinations. (*See* AR 594-96, 632-36.) As such, the ALJ did not err in relying on the opinions of Drs. Georgis and Gurdin.

However, as this case is being remanded to allow the ALJ to consider the evidence following Plaintiff's October 2009 surgery, the ALJ may wish to re-consider the weight given to the opinions of Drs. Gurdin and Georgis since they pre-date the October 2009 surgery and do not account for any conditions or limitations Plaintiff may have had after that time.

### B. The ALJ's Determination of Plaintiff's Credibility

Plaintiff contends that the ALJ improperly rejected her testimony concerning her impairments and failed to properly evaluate her credibility. (Doc. 18, 20:6-25:13.) According to the Commissioner, however, the ALJ found that the record contained substantial evidence to support the ALJ's conclusions. (Doc. 19, 14:5-17:2.) In considering Plaintiff's credibility, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the [ALJ's] residual functional capacity assessment." (AR 31.)

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray*, 554 F.3d at 1226-27; 20 C.F.R. §§ 404.1529, 416.929.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, and did not make an express finding that Plaintiff was malingering. (AR 31.) Therefore, absent an affirmative finding of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and convincing. *Vasquez*, 572 F.3d at 591.

Because the Court remands this case for renewed consideration of the medical evidence, the Court dispenses with an exhaustive analysis of the ALJ's assessment of Plaintiff's credibility. Consideration of Plaintiff's credibility is inescapably linked to conclusions regarding the medical evidence. 20 C.F.R. § 416.929. As such, the re-evaluation of the medical evidence may impact the ALJ's findings as to Plaintiff's creditability.

**C.     The ALJ's Consideration of the Third Party Witness**

Plaintiff contends that the ALJ failed to properly consider the statement of Plaintiff's third-party witness. (Doc. 18, 25:14-26:24.)  Defendant asserts that the ALJ provided germane reasons for rejecting the third-party testimony. (Doc. 19, 17:3-20.)

Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  The Ninth Circuit has held that competent lay witness testimony cannot be disregarded without comment, *id.*, and that to discount it, the ALJ "must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

However, because the Court remands this case for renewed consideration of the medical evidence and renewed consideration of Plaintiff's credibility, the Court dispenses with an exhaustive analysis of the third-party witness statement.  Consideration of lay testimony is inescapably linked to conclusions regarding the medical evidence. 20 C.F.R. § 416.929.  Further, reconsideration of Plaintiff's credibility may also impact how the ALJ views the third party's statement.  As such, the ALJ should consider the third-party's statement in light of the reconsideration of the medical evidence and Plaintiff's statements.

**D.     Remand is Warranted**

As a general rule, remand is warranted where additional administrative proceedings could remedy the defects in the Commissioner's decision. *See Harmon v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000).  In this case, remand is appropriate for renewed consideration of the post-surgical medical evidence, the evidence admitted to the record by the Appeals Council, and the credibility of Plaintiff and the third party witness.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further proceedings consistent with this order.  The Clerk of this Court is DIRECTED to enter

judgment in favor of Plaintiff Cheryl Pierce and against Defendant Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

| Dated: | **September 25, 2013** | **/s/ Sheila K. Oberto** |
|---|---|---|
| | | UNITED STATES MAGISTRATE JUDGE |